**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re *Ex Parte* Application of<br><br>LAM TRADE FINANCE GROUP II LLC,<br><br>Applicant,<br><br>For an Order to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782. | Case No. 26-mc-514 |

**DECLARATION OF CHRISTOPHER ANTHONY BUSHELL IN SUPPORT OF APPLICANT LAM TRADE FINANCE GROUP II LLC'S *EX PARTE* APPLICATION FOR AN ORDER TO SHOW CAUSE TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782**

I, Christopher Anthony Bushell, declare as follows:

1. I am a solicitor of the Senior Courts of England and Wales and a partner in the London office of the law firm Herbert Smith Freehills Kramer LLP, counsel to LAM TFG Trade Finance Group II LLC ("LAM TFG") in certain proceedings in the High Court of Justice of England and Wales (the "High Court"), which are outlined in further detail below. I have been practising law in England and Wales since I qualified as a solicitor in 2004.

2. I submit this declaration in support of LAM TFG's Application for an Order to Show Cause to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 (the "Application"), filed contemporaneously herewith. The facts and matters set forth in this declaration are based on my own personal knowledge and as counsel for LAM TFG. If called on to testify, I could and would testify to the facts set forth herein.

## I. FACTUAL BACKGROUND

3. LAM TFG is a special purpose vehicle that sits within the Point Bonita Capital fund, a private credit fund that specialises in providing trade financing. Point Bonita Capital is managed by Leucadia Asset Management LLC, a subsidiary of Jefferies Financial Group Inc.

4. Radiant World Corporation Pte Ltd. ("Royalline"), formerly known as Royalline Trading Pte Ltd., is a company incorporated under the laws of the Republic of Singapore with registration number 201205590Z. Its registered address is 30 Cecil Street #19-08, Prudential Tower, Singapore 049712. Royalline is wholly owned by, and is the operating subsidiary of, Radiant World Holding Ltd. ("Radiant World," and, together with Royalline, "Radiant"). Radiant World is the parent company of Royalline. Sapphire Minmetals Corporation Ltd. ("Sapphire") is a corporation organised under the laws of Hong Kong. It was incorporated on January 29, 2008. Pinkesh Nahar is the founder, chairman and principal of Radiant. Rakesh Sethi is the chairman, managing director and principal of Sapphire.

5. On December 13, 2022, LAM TFG entered into a Master Receivables Purchase Agreement with Sapphire and two related entities (the "Sapphire MRPA"). On July 30, 2024, LAM TFG entered into a Master Receivables Purchase Agreement with Royalline and Radiant World (the "Radiant MRPA" and, together with the Sapphire MRPA, the "MRPAs"). In each MRPA, LAM TFG was defined as the "Buyer" and Sapphire or Royalline, as applicable, were defined as the "Sellers". Under the Radiant MRPA, Radiant World was described as "Guarantor" and gave an unconditional and irrevocable guarantee of Royalline's obligations.

6. The MRPAs each defined a "Receivable" as "any right to payment of a monetary obligation, whether or not earned by performance, owed to any Seller or the Buyer (as assignee of Seller) by an Account Debtor . . ." and each provided in clause 1(a) that each of the Sellers was permitted to deliver a "Purchase Request" to LAM TFG relating to Receivables. Under clause

1(b) of each of the MRPAs, upon receipt of such a Purchase Request, LAM TFG then had the option to purchase the Receivable specified therein. As set forth in the MRPAs, thereafter, (i) the Seller was obligated to sell and assign its right, title and interest with respect to the purchased Receivables to LAM TFG; and (ii) LAM TFG was to pay a "Purchase Price" to the Seller as consideration.

7. Under the MRPAs, Sapphire and Radiant also represented and warranted that, *inter alia*, (i) each Purchased Receivable was "a valid, current, genuine, and freely assignable trade account receivable"; that (ii) upon purchase of the Receivable, the Receivable will have been validly and absolutely assigned to the Buyer; that (iii) the Receivable and the underlying contract constituted "a bona fide, genuine, existing and enforceable legal, valid and binding obligation of the applicable Account Debtor"; and that (iv) the sale and assignment was "effective to transfer to the Buyer legal and equitable title to …each Purchased Receivable".

8. From November 2021 to late 2025, LAM TFG received payment of the receivables due to it from the relevant Account Debtor. After January 20, 2026 (in the case of the Radiant MRPA) and February 23, 2026 (in the case of the Sapphire MRPA), the Receivables purchased by LAM TFG under the MRPAs either ceased to be paid altogether or, in the limited instances in which they were paid, were not paid as they came due.

9. After the unpaid Receivables went into default, LAM TFG began an investigation, as a result of which it has gathered extensive *prima facie* evidence that Sapphire and Radiant systematically falsified commercial documents in order to fraudulently obtain hundreds of millions of dollars of financing from LAM TFG and that the Receivables purportedly purchased by LAM TFG from Radiant or Sapphire and which have gone unpaid either did not exist and/or were not validly assigned. The evidence accumulated by LAM TFG included evidence that Radiant and

Sapphire had falsified invoices, notices of assignment, contracts and email correspondence purportedly sent by certain Account Debtors.

10. The face value of the unpaid and apparently fraudulent Receivables due to LAM TFG exceeds $500 million.

## II. THE HIGH COURT PROCEEDINGS

11. On August 27, 2026, LAM TFG commenced a claim in the High Court against Royalline, Radiant, Sapphire, Pinkesh Nahar and Rakesh Sethi (collectively, the "Defendants") for deceit, unlawful means conspiracy, restitution, breach of contract and in debt by filing and serving a Claim Form and Particulars of Claim (the "High Court Proceedings"). My firm acts for LAM TFG in the High Court Proceedings and I have conduct of the High Court Proceedings on LAM TFG's behalf.

12. In the High Court Proceedings, LAM TFG seeks rescission of the purchase of each unpaid receivable, restitution of the purchase price for each unpaid receivables, tortious and contractual damages, a contractual debt and interest thereon. The maximum value of LAM TFG's claim (excluding interest) is $499,165,665.88, that being the sum of the purchase price paid by LAM TFG in respect of the apparently fraudulent receivables that it purchased from Radiant and Sapphire.

13. Also on August 27, 2026, following a without notice hearing before the High Court, LAM TFG obtained a worldwide freezing order against all of the Defendants, in support of the High Court Proceedings (the "WFO"). LAM TFG then obtained domestic freezing orders, mirroring the terms of the WFO, in Hong Kong and Singapore on September 7, 2026 and September 9, 2026 respectively. The WFO and domestic freezing orders restrain each of the Defendants from disposing of, dealing with or dissipating their assets (subject to limited exceptions

for living expenses and expenses incurred in the ordinary and proper course of business) up to the maximum value of LAM TFG's claim.

14. On September 17, 2026, the High Court made a further order that the WFO be continued in substantially the same terms until a further hearing takes place on December 15-17, 2026 (or a further order is made).

## III. THE DISCOVERY TARGETS

15. I am advised by my colleagues in our New York office that LAM TFG is seeking Section 1782 relief to seek information about the payments made to or by Radiant and Sapphire between September 1, 2021 to the present, including evidence concerning: the originator, the beneficiary, the originating, intermediary, and beneficiary banks, and the amount and date of each subsequent transfer of such funds. This information will assist with LAM TFG's efforts to establish and evidence the Defendants' *modus operandi*, including the mechanics of the Fraud and the destination of the fraudulently-obtained funds. To the extent relevant, such information may be submitted as evidence in the High Court Proceedings. Documents produced as a result of these requests may also allow LAM TFG to identify additional conspirators, beneficiaries of the fraudulently-obtained funds and/or additional claims (either in England and Wales or in other jurisdictions). It may also assist LAM TFG with the identification of assets for future enforcement and with the policing of the terms of the WFO granted by the High Court.

16. Specifically, in furtherance of the High Court Proceedings, LAM TFG is seeking third-party discovery from the Federal Reserve Bank of New York (the "Federal Reserve") and the Clearing House Interbank Payments System ("CHIPS," and together with the Federal Reserve, "Discovery Targets"). It is my understanding that practically every large U.S. dollar wire transfer passes through one of their two systems. The Federal Reserve runs *Fedwire*, and CHIPS is the main private system in the U.S. for large-value dollar payments. LAM TFG therefore has reason

to believe that the Discovery Targets will likely have information concerning the transfer of funds to and from the Defendants which went through the United States, including any U.S. dollar denominated transactions. That information can reveal where the funds went and which banks and persons received them.

17. I accordingly submit this Declaration in support of LAM TFG's Section 1782 Application being filed in the Southern District of New York to obtain discovery from the Discovery Targets. As of the date of this Declaration, the High Court Proceedings have been commenced, and any information obtained through this Section 1782 Application may be used by LAM TFG in the High Court Proceedings.

18. It is important to note that under the law of England and Wales, evidence obtained herein relating to the transfer of the defrauded payments and/or other fraudulent transactions is admissible in the High Court Proceedings. Documents detailing the payments made and received by the Defendants are likely to assist LAM TFG with evidencing the *modus operandi* of the Defendants' fraud and obtaining judgment against them.

**A. Description and Relevance of the Discovery Sought**

19. Upon information and belief, the Discovery Targets are in possession of relevant information that will be helpful in tracing the movement of funds to and from accounts of the Defendants. The wire transfer records will allow LAM TFG to build up a picture of the movement of funds and are expected to demonstrate what the Defendants did with the funds fraudulently obtained from LAM TFG, including whether Radiant or Sapphire received money from any Account Debtors for the receivables that LAM TFG had purchased. This information will assist LAM TFG in establishing and evidencing the pattern of the Defendants' fraud.

20. The proposed subpoenas, outlining the specific document requests, are included as exhibits to LAM TFG's Section 1782 Application.

21. LAM TFG's discovery requests are narrow and tailored to a limited period: a period beginning September 2021, the month of LAM TFG's first purchase of Receivables, and covering the period up to the date of the Court's order granting the Application.

**B. Facts Relevant to the Elements of 28 U.S.C. § 1782**

22. I am advised by my colleagues in our New York office that LAM TFG seeks assistance pursuant to 28 U.S.C. § 1782, to obtain relevant and probative documentary evidence from the Discovery Targets for use in the High Court Proceedings.

23. I am further advised that both Discovery Targets "reside or are found" in the Southern District of New York, therefore they meet Section 1782's requirement that the person holding the evidence be in the district where the application is filed.

24. The Federal Reserve Bank is located at 33 Liberty Street, New York, NY 10045, and thus located within the Southern District of New York.

25. CHIPS in turn is operated by The Clearing House Payments Company L.L.C., which is headquartered at 450 West 33rd Street, New York, NY 10001, also located within the Southern District of New York.

26. The Discovery Targets are not parties to the High Court Proceedings, and are not expected to become parties to these proceedings in the future.

27. It is, in my view and based on my professional experience, unlikely that LAM TFG could obtain an order from the courts of England and Wales to compel the Discovery Targets to provide the discovery sought by this application in the High Court Proceedings, because the Discovery Targets and the documents which LAM TFG is seeking are located outside of the jurisdiction of the courts and authorities of England and Wales. Although it is possible to make an application to the courts of England and Wales for discovery against a party based outside of England and Wales, I am only aware of such applications having been granted in circumstances

where the documents in question were located within England and Wales. The courts of England and Wales have expressed scepticism as to the availability of such orders where the documents in question are located outside of the jurisdiction, due to concerns around the principle of territoriality.

28. I note that it is possible for the courts of England and Wales to request the assistance of foreign courts to obtain evidence via the letter of request regime under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. However, even if LAM TFG were able to bring a successful application for the courts of England and Wales to issue a letter of request, the assistance of the U.S. Courts would still be required in order to compel discovery, and the availability of the section 1782 process means that LAM TFG can instead avail itself of the assistance of the U.S. Courts directly to compel discovery by the Discovery Targets. Further, it is unclear whether the English Court would issue a letter of request in circumstances where LAM TFG does not seek, in this application, individually specified documents, as is generally required under the letter of request regime.

29. It is important to highlight that, in my experience, the courts and authorities of England and Wales are receptive to any relevant information or documents lawfully obtained in other jurisdictions, including the United States. Further, there is no law in England and Wales nor is there any ruling in the proceedings which would prevent LAM TFG from seeking the information sought here from the Federal Reserve Bank and CHIPS.

30. I note for completeness that the WFO contains an undertaking by LAM TFG that it would not, without the High Court's permission, seek to enforce the WFO in any country outside England and Wales or seek an order of a similar nature including orders conferring a charge or other security against the Defendants or their assets. I do not consider that this application falls

within the scope of that undertaking, since it seeks the discovery of documents rather than an order of a similar nature to the WFO.

31. I also note that LAM TFG has undertaken, under the WFO, not to "use any information obtained as a result of [the WFO] for the purpose of any civil or criminal proceedings, either in England and Wales or in any other jurisdiction, other than this claim", without the permission of the High Court. I confirm that LAM TFG does not use any information obtained as a result of the WFO in this application.

32. The discovery requests are narrowly tailored to seek wire transfer and payment message records relating to the Defendants' known accounts and are limited in time to the relevant period. The information sought is of the kind that CHIPS and the Federal Reserve maintain in the ordinary course of their operations and lends itself to identification and production without undue burden. The production of electronically stored, searchable payment records by the Discovery Targets will not create an undue burden, especially when the requests are narrowly drawn as outline in the proposed subpoenas.

33. No previous application for this specific relief has been made in the United States. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 19, 2026
London, United Kingdom

Christopher Anthony Bushell